**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                        :
**FRANCIS SCOTT HUNT and SHUNDRA**
**CHERI HUNT, individually and as Trustee**        :
**for IAN CHRISTOPHER HUNT,**          **OPINION AND ORDER**
**LAWRENCE A. MCMAHON**                                 :
**and JUDITH J. MCMAHON, PAUL D.**
**CAVANAGH individually and as Trustee**            :
**for the PAUL D. CAVANAGH TRUST,**       **06 Civ. 170 (SAS)**
**and VIRGINIA POPE,**                                 :

                   **Plaintiffs,**                     :

                  - **against** -                      :

**ENZO BIOCHEM, INC., HEIMAN GROSS,**      :
**BARRY WEINER, ELAZAR RABBANI,**
**SHARIM RABBANI, JOHN DELUCCA,**          :
**DEAN ENGELHARDT, and JOHN DOES 1-50,**
                                                        :
                  **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                        :
**KEN ROBERTS,**

                   **Plaintiff,**                      :       **06 Civ. 213 (SAS)**

                  - **against** -                      :
                                                        :
**ENZO BIOCHEM, INC., HEIMAN GROSS,**
**BARRY WEINER, ELAZAR RABBANI,**          :
**SHARIM RABBANI, JOHN DELUCCA,**
**DEAN ENGELHARDT, and JOHN DOES 1-50,**:

                  **Defendants.**            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/15/09

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```
                                                    :

PAUL LEWICKI,
                                                    :

                              Plaintiff,            :           06 Civ. 6347 (SAS)

                                                    :

            - against -
                                                    :

ENZO BIOCHEM, INC., HEIMAN GROSS,
BARRY WEINER, ELAZAR RABBANI,              :
SHARIM RABBANI, JOHN DELUCCA,
DEAN ENGELHARDT, and JOHN DOES 1-50,:

                                                    :
                              Defendants.            :
```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```
SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Enzo Biochem, Inc. ("Enzo" or the "Company"), a public company incorporated in 1970, has been engaged in the research and development of treatments to fight the human immunodeficiency virus ("HIV") and other disease. Plaintiffs are individuals who invested in Enzo securities.[1]  Defendants include the

---

[1]      On December 11, 2006, this Court issued an Opinion and Order dismissing the claims of the Hunt plaintiffs for failing to file their claims before the expiration of the statute of limitations. *See Hunt v. Enzo Biochem, Inc.*, 471 F. Supp. 2d 390, 414 (S.D.N.Y. 2006) ("*Hunt I*").  On August 27, 2007, this Court entered an Order dismissing with prejudice the McMahons' claims for failure to respond to defendants' motion to dismiss the Second Amended Complaint and to appear in the action with counsel.  *See* 8/27/07 Order Dismissing With Prejudice the Actions of the McMahons.  Thus, the only plaintiffs left in this action are Cavanagh, Pope, Lewicki, and Roberts.

Company, several officers and directors, and an outside consultant.[2] Plaintiffs allege that they suffered financial losses by relying on defendants' misstatements and omissions when deciding to purchase, hold, and sell Enzo securities. The gravamen of plaintiffs' common law fraud claims is that defendants conspired to inflate the price of Enzo stock through a series of misrepresentations and omissions concerning the efficacy of Enzo's medical treatments in order to sell their shares at artificially inflated prices. After discovery, Enzo and Weiner (together, the "Enzo defendants"), as well as Gross filed motions for summary judgment to dismiss all claims against them. For the reasons stated below, their motions are granted.

## II.   BACKGROUND[3]

---

[2]   Barry Weiner is Enzo's President and a member of its Board of Directors. Elazar Rabbani is Chief Executive Officer, and his brother, Sharim Rabbani, is Chief Operating Officer. The Rabbanis are also members of Enzo's Board of Directors. John Delucca is a director of the Company. Dean Engelhardt is Enzo's Executive Vice President. Heiman Gross is an outside consultant. Plaintiffs decided not to proceed with their claims against Sharim Rabbani and John Delucca after this Court's Opinion and Order in *Hunt I*. *See* First Amended Complaint. The Court dismissed plaintiffs' claims against Elazar Rabbani in its January 9, 2008 Opinion and Order. *See Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 600-01 (S.D.N.Y. 2008) ("*Hunt II*"). On May 28, 2008, Engelhardt's counsel filed a suggestion of death notice with the Court. *See* 5/28/08 Suggestion of Death Notice of Dean Engelhardt.

[3]   The facts in this section are not in dispute and are drawn from Defendants' Rule 56.1 Statement ("Def. 56.1"), Plaintiffs' Counterstatement Pursuant to Rule 56.1 ("Pl. Counter. 56.1") and from the evidence submitted to the

3

**A.      Facts**

      **1.      The Litigation Agreement Between Glaser and Plaintiffs Cavanagh, Lewicki, and Pope**

In April 2001, Paul Lewicki – one of the plaintiffs in this action – retained Michael Rovell to represent him in connection with potential claims he might have against Enzo Biochem.[4]  The retainer agreement provided that in return for a $10,000 fee, Rovell would investigate whether a lawsuit could be brought against any defendants.[5]  The agreement appears also to be a litigation agreement because it provides that in the event of recovery in any lawsuit, Lewicki would be entitled to three and a half times what he had paid in attorney fees, with the remainder to be split among Larry Glaser, Paul Cavanagh, Scott Hunt, Lawrence McMahon, and Virginia Pope.[6]  Finally, the agreement provides that any settlement in a potential lawsuit brought by Glaser would require the approval of Glaser, and in turn, Glaser "can only force a settlement" if he and one other

---

Court by the parties if not included in the Rule 56.1 statements.

[4]      *See* 4/11/01 Retainer Letter Agreement between Michael Rovell and Paul Lewicki, Ex. E to Declaration of Donald Chase, counsel for Enzo defendants ("Chase Decl.").

[5]      *See id.* at 1.

[6]      *See id.*

4

participant to the agreement approved it.[7]

Although the agreement was signed by Rovell but not by the other participants, Lewicki admitted during his deposition in this case to the existence of the agreement and the requirement that Glaser and one other participant approve any potential settlement.[8] He also testified that the group's strategy was to succeed in a lawsuit brought by Glaser, then contend that the outcomes of any subsequent lawsuits brought by the other plaintiffs would be dictated by the outcome of the Glaser suit.[9]

Cavanagh and Pope also acknowledged in their depositions that they had signed similar – if not identical – agreements in 2001 providing that they would receive a portion of any recovery Glaser obtained from his lawsuit against Enzo and Glaser would receive a portion of any recovery they obtained in their

---

[7]    *Id.*

[8]    *See* Transcript of Paul Lewicki Deposition, Ex. B to Chase Decl., at 55:6-22 (summarizing agreement with Rovell); 56:11-25 (admitting that agreement provided that any settlement in an action brought by Glaser would require his approval and the approval of at least one of the others).

[9]    *See id.* at 48:10-17 ("[Rovell] said that, you know, this case was similar to Glaser's case, and if we would have won, he was going to file for summary judgment so that we would be successful in our suit. But since we lost and the suit was identical basically to the Glaser suit and Mr. Chase threatened him with sanctions, so he told me that in the phone conversation.").

5

lawsuits.[10]  In addition, Cavanagh and Pope admitted that the purpose of having Glaser file his lawsuit first was that any victory obtained in his lawsuit would be used in subsequent lawsuits to argue that a similar outcome should apply.[11]

Glaser also testified at his deposition that he had entered into a written agreement with Lewicki, Cavanagh, and Pope in 2001.[12]  He further confirmed that the agreement provided that these individuals would contribute to Glaser's legal expenses in return for a share of any recovery Glaser obtained in his lawsuit.[13]

Finally, a January 2009 agreement signed by Cavanagh and Pope

---

[10]     *See* Transcript of Deposition of Paul Cavanagh ("Cavanagh Dep. Tr."), Ex. A to Chase Decl., at 135:2-25 (testifying that according to the agreement he and others had signed, he would receive a portion of any recovery in Glaser's lawsuit and vice versa); Transcript of Deposition of Virginia Pope ("Pope Dep. Tr."), Ex. C to Chase Decl., at 289:7-20 (acknowledging the existence of an agreement which directed the sharing of any recovery from Glaser's lawsuit or any other lawsuit).

[11]     *See* Cavanagh Dep. Tr. at 222:1-8 (admitting that the instant lawsuit was not filed for four and half years after the alleged misconduct because the plaintiffs had decided to await the outcome of Glaser's lawsuit before initiating their own); Pope Dep. Tr. at 76:23-77:22 (acknowledging that Glaser would initiate litigation first and the litigation of the others would follow), 297:14-21 (same).

[12]     *See* Deposition Transcript of Larry Glaser, Ex. B to Reply Declaration of Donald H. Chase ("Chase Rep. Decl."), at 380:1-10.

[13]     *See id.* at 380:7-22.

confirms the existence of the 2001 litigation agreement and provides again for a splitting of any recovery in this action.[14]  In addition, it requires the "full cooperation" of Glaser in the prosecution of these claims.[15]  The agreement also provides that each participant bestows a power of attorney on the others such that any of the participants may discuss with their counsel "any matter pertaining to the most zealous possible prosecution of our cases and claims . . . ."[16]

In 2002, Glaser and members of his family – who are not parties to this action – retained Rovell to file a lawsuit against the defendants in the Eastern District of Virginia alleging violations of federal securities laws, civil conspiracy, and common law fraud (the "Glaser Action").  The Glaser family alleged that Enzo and its officers made statements through press releases and other communications exaggerating the preliminary success of its HIV and Hepatitis B therapies, including pre-clinical and clinical trials as well as its stealth vector, its patent estate, and other commercial arrangements.[17]

In 2005, after the Fourth Circuit remanded a portion of the case to the

---

[14]     *See* 1/26/09 Agreement, Ex. E to Chase Decl.

[15]     *Id.*

[16]     *Id.*

[17]     *See Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 476 (4th Cir. 2006).

7

district court following an earlier appeal, the district court granted defendants' motion to dismiss the remaining common law fraud claim.[18]  In September 2006, the Fourth Circuit affirmed the district court's dismissal of that claim.[19]  *First*, the court held that the district court had properly dismissed the claim against the individual defendants because the plaintiffs had not shown that they had made any actionable statements.[20]  *Second*, the court ruled that plaintiffs had failed to satisfy the requirement to plead loss causation.[21]

In January 2006, while the appeal of the dismissal of the Glaser Action was pending in the Fourth Circuit, two members of the Hunt family, two members of the McMahon family, Cavanagh, and Pope filed a joint action against defendants in this Court.[22]  Their Complaint was "nearly identical" to the complaint that was filed in the Glaser Action.[23]  Lewicki followed by filing his

---

[18]     *See id.* at 475.

[19]     *See id.* at 480.

[20]     *See id.* at 476-77.

[21]     *See id.* at 477.

[22]     *See* Complaint of *Hunt v. Enzo Biochem*, 06 Civ. 170 ("*Hunt* Compl.").

[23]     *Hunt I*, 471 F. Supp. 2d at 398 n.49.

8

own lawsuit.[24] Ken Roberts, another plaintiff, also filed a lawsuit against Enzo and the other defendants.[25] All of the plaintiffs had retained Rovell as their attorney.[26] These actions were consolidated before this Court.[27]

On February 5, 2008, plaintiffs filed a Third Amended Complaint alleging claims of common law fraud.[28] They allege that defendants made material

---

[24]     *See* Complaint of *Lewicki v. Enzo Biochem*, 06 Civ. 6347 ("*Lewicki* Compl.").

[25]     *See* Complaint of *Roberts v. Enzo Biochem*, 06 Civ. 213 ("*Roberts* Compl.").

[26]     *See Hunt* Compl.; *Lewicki* Compl.; *Roberts* Compl.

[27]     *See* 3/30/06 Order of Consolidation. Lewicki's case had not yet been filed and was therefore not included in this Order. However, his action was subsequently identified as associated with this case and now proceeds along with the other two actions. *See, e.g.*, 1/17/07 Stipulation and Order (affecting all three actions). Although Lewicki and Roberts continued to file individual complaints in their own respective actions, their complaints were virtually identical to the corresponding complaints filed in the lead *Hunt* action and therefore will not be addressed separately. On January 3, 2007, plaintiffs filed a First Amended Complaint under seal with the Court. *See* First Amended Complaint. After briefing, the Court entered an Opinion and Order granting in part and denying in part defendants' motions to dismiss. *See Hunt II*. The Court granted Elazar Rabbani's motion to dismiss, holding that plaintiffs had failed to plead their common law fraud claim against him with sufficient particularity. *See* 530 F. Supp. 2d at 600. The Court denied all other defendants' motions to dismiss, finding that plaintiffs had adequately pled loss causation and reliance. *See id.* at 597, 599, 600 (holding also that plaintiffs had adequately pled their holder claims).

[28]     *See* Third Amended Complaint ("Third Am. Compl.").

misrepresentations with respect to its treatment of HIV, and in particular, regarding the progress of its pre-clinical and clinical trials, its stealth vector, and its patent estate.[29]  They also assert that defendants made these representations in order to artificially inflate the price of Enzo stock, and that as a result, plaintiffs relied on these misrepresentations and incurred losses on their investments.[30]

### 2.    The Enzo Defendants' Contacts with California

On December 11, 2006, this Court issued an Opinion and Order granting defendants' first motions to dismiss.[31]  The Court dismissed all purchase claims for failure to allege loss causation and all holder claims for failure to plead reliance.[32]  The Court also specifically found that plaintiffs should have been on inquiry notice of their potential claim as early as June 2001.[33]  The Court held that because New York's borrowing statute dictates that the applicable statute of limitations for a common law fraud claim is determined by each plaintiff's state of

---

[29]    *See id.* ¶ 2.

[30]    *See id.* ¶¶ 3, 4.

[31]    *See Hunt I*, 471 F. Supp. 2d 390.

[32]    *See id.* at 410, 412-13.

[33]    *See id.* at 403.

residence, the statute of limitations had run on all plaintiffs' claims.[34]

Nevertheless, the Court also noted that New York courts have long required the borrowing of tolling statutes that are applicable in a foreign state and determined that the state of residence of each plaintiff in this case – except for the Hunt plaintiffs who lived in Georgia – had tolling statutes that might apply.[35]

These tolling statutes provided that the statute of limitations would be tolled for the period in which the absent defendants are not amenable to personal jurisdiction in the state.[36]  Because the defendants in this case had failed to establish that these states had personal jurisdiction over them during the relevant period, the Court denied defendants' motion to dismiss on this ground with leave to renew the motion at the close of discovery.[37]

Defendants have now provided the Court with evidence of their contacts with California, where Roberts resided.  None of this evidence has been disputed by plaintiffs.  *First*, defendants note that the HIV clinical trial that was sponsored by Enzo was conducted at the University of California at San Francisco

---

[34]    *See id.* at 400, 403.

[35]    *See id.* at 405.

[36]    *See id.* at 404-05.

[37]    *See id.* at 408.  With the exception of the Hunt plaintiffs, the Court allowed all plaintiffs leave to replead.  *See id.* at 414.

11

("UCSF").[38]  Starting in 1997, Enzo personnel began to communicate and meet with doctors in San Francisco to investigate the clinical trial site.[39]  These communications continued after the trial site was chosen and doctors at UCSF began assisting Enzo in "form[ing] an appropriate protocol and [] assist[ing] in the presentation to UCSF's institutional review board."[40]  After the trial began in mid-1998, Enzo directed "substantial funding" and sent testing materials and personnel to the state to assist with the clinical trial.[41]

*Second*, defendants note that they have business contacts with California.  For instance, between 2000 and 2002, Enzo sold over $22 million of products in California, making up approximately fourteen percent of Enzo's revenue for those years.[42]  Between 2003 and 2005, Enzo's revenues in California were over $14 million or roughly ten percent of total revenue.[43]  Enzo has also

---

[38]     *See* Def. 56.1 ¶¶ 119-122; *see* Pl. Counter. 56.1 ¶¶ 119-122 (failing to contest these facts).

[39]     *See* Def. 56.1 ¶ 120.

[40]     *Id.* ¶ 121.

[41]     *Id.* ¶ 122.

[42]     *See id.* ¶ 125; *see* Pl. Counter. 56.1 ¶ 125 (failing to contest this fact).

[43]     *See* Def. 56.1 ¶ 125; *see* Pl. Counter 56.1 ¶ 125.

retained a sales agent in California since 2001.[44]  In addition, around April 1998,

Enzo entered into one of its largest distribution agreements with Affymetrix, a

California company.[45]

      *Third*, defendants inform the Court that since 2000, Weiner has taken

four or five trips to California every year, during which he met with investors or

potential investors, attended conferences relating to Enzo's work, and attended

meetings with suppliers, distributors, and licensors.[46]  In addition, Weiner met

with Roberts in California, and in fact, Roberts alleges that many of Weiner's

misrepresentations were repeated to him during that meeting.[47]

## III.   LEGAL STANDARDS

### A.   Summary Judgment

      Summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

---

[44]    *See* Def. 56.1 ¶ 126; *see* Pl. Counter. 56.1 ¶ 126 (failing to contest this fact).

[45]    *See* Def. 56.1 ¶ 127; *see* Pl. Counter. 56.1 ¶ 127 (failing to contest this fact).

[46]    *See* Def. 56.1 ¶ 131; *see* Pl. Counter. 56.1 ¶ 131 (failing to contest this fact).

[47]    *See* Def. 56.1 ¶ 124; *see* Pl. Counter. 56.1 ¶ 124 (failing to contest this fact).

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[48] An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[49] A fact is material when it "'might affect the outcome of the suit under the governing law.'"[50] "It is the movant's burden to show that no genuine factual dispute exists."[51]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"[52] To do so, the non-moving party must do

---

[48]    Fed. R. Civ. P. 56(c).

[49]    *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[50]    *Ricci v. DeStefano*, 530 F.3d 88, 109 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

[51]    *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

[52]    *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). *Accord In re September 11 Litig.*, No. 21 MC 97, 2007 WL 2332514, at *4 (S.D.N.Y. Aug. 15, 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court –

14

more than show that there is "'some metaphysical doubt as to the material facts,'"[53] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[54] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[55]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[56] However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court

---

that there is an absence of evidence to support the nonmoving party's case.") (quotation omitted).

[53]     *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[54]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[55]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

[56]     *See Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).

on a motion for summary judgment.'"[57]  Summary judgment is therefore "only appropriate when there is no genuine issue as to any material fact, making judgment appropriate as a matter of law."[58]

## B.    Res Judicata

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . .'"[59]  "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'"[60]

---

[57]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[58]    *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486-87 (2d Cir. 2006)).

[59]    *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *Southern Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897)).

[60]    *Taylor v. Sturgell*, 128 S. Ct. 2161, 2171 (2008) (quoting *Montana*, 440 U.S. at 153-54).

16

"To determine whether the doctrine of res judicata bars a subsequent action, [courts] consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same."[61] Two actions are the same when they "involve the same claim or nucleus of operative fact."[62] "'To ascertain whether two actions spring from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations . . . .'"[63]

"Res judicata may also preclude claims by parties who were not involved in the earlier lawsuit."[64] "However, claim preclusion may be asserted only when the precluded party's interests have been represented in a previous

---

[61]     *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006) (quoting *Corbett v. MacDonald Moving Services, Inc.*, 124 F.3d 82, 87-88 (2d Cir. 1997)).

[62]     *Id.* (citing *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (internal quotations omitted)).

[63]     *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (quoting *Interoceanica Corp.*, 107 F.3d at 90 (internal quotations omitted)).

[64]     *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995). *Accord Green v. Santa Fe Indus., Inc.*, 70 N.Y.2d 244, 253 (1987) ("It is fundamental that a judgment in a prior action is binding not only on the parties to that action, but on those in privity with them.").

lawsuit."[65]  "Res judicata may bar non-parties to earlier litigation not only when

there was a formal arrangement for representation in, or actual control of, the

earlier action but also when the interests involved in the prior litigation are

virtually identical to those in later litigation."[66]  In other words, there must be a

"substantial identity of the incentives of the earlier party with those of the party

against whom res judicata is asserted."[67]  The New York Court of Appeals has

therefore held that non-parties to a prior lawsuit may be bound by that judgment,

including "those who are successors to a property interest, those who control an

action although not formal parties to it, those whose interests are represented by a

party to the action, and possibly co-parties to a prior action."[68]  That the two

actions are both brought by the same attorneys or law firm is "of singular

importance."[69]

      "In addressing privity, courts must carefully analyze whether the

party sought to be bound and the party against whom the litigated issue was

---

[65]    *Chase Manhattan Bank*, 56 F.3d at 345 (citing *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir. 1977).

[66]    *Id.* (citation omitted).

[67]    *Id.* at 346.

[68]    *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970).

[69]    *Id.* at 278.

decided have a relationship that would justify preclusion, and whether preclusion,

with its severe consequences, would be fair under the particular circumstances."[70]

"Doubts should be resolved against imposing preclusion to ensure that the party to

be bound can be considered to have had a full and fair opportunity to litigate."[71]

> The New York Court of Appeals has explained

>> "A determination whether the first action or proceeding
>> genuinely provided a full and fair opportunity requires
>> consideration of the realities of the [prior] litigation,
>> including the context and other circumstances which . . .
>> may have had the practical effect of discouraging or
>> deterring a party from fully litigating the determination
>> which is now asserted against him."[72]

"Included among the factors to be considered are 'the nature of the forum and the

importance of the claim in the prior litigation, the incentive and initiative to

litigate and the actual extent of litigation, [and] the competence and expertise of

counsel.'"[73]

## C.    Personal Jurisdiction in California

> "California's long-arm statute authorizes California courts to exercise

---

[70]    *Buechel v. Bain*, 97 N.Y.2d 295, 304-05 (2001).

[71]    *Id.* at 305.

[72]    *Hickerson v. City of New York*, 146 F.3d 99, 109 (2d Cir. 1998)
(quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501 (1984)).

[73]    *Id.* (quoting *Ryan*, 62 N.Y.2d at 501).

19

jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California."[74] "A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate "'traditional notions of fair play and substantial justice.'"[75]

"A nonresident defendant may be subject to the *general* jurisdiction of the forum if his or her contacts in the forum state are 'substantial . . . continuous and systematic.'"[76] "Such a defendant's contact with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction."[77] If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the *specific* jurisdiction of the forum, if the defendant

---

[74]     *Vons Cos., Inc. v. Seabest Foods, Inc.*, 926 P.2d 1085, 1091 (Cal. 1996).

[75]     *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[76]     *Id.* at 1092 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 446 (1952)) (emphasis in original).

[77]     *Id.* (citations omitted).

20

has purposefully availed himself or herself of forum benefits [], and the controversy is related to or arises out of a defendant's contacts with the forum."[78] "[I]t is fair to subject defendants to specific jurisdiction, because their forum activities should put them on notice that they will be subject to litigation in the forum."[79]

### D.    The Element of Scienter in Fraud Actions

The scienter element for fraud claims under New York law is similar to that required for federal securities fraud claims.[80]  A plaintiff must show that the defendant acted with "an intent to defraud."[81]  A plaintiff may satisfy this element by demonstrating either that (1) "'defendants had both the motive and opportunity to commit fraud,'" or (2) proffering "'strong circumstantial evidence of conscious

---

[78]    *Id.* (citations and internal quotations omitted).

[79]    *See id.*

[80]    *See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*, 376 F. Supp. 2d 385, 406 (S.D.N.Y. 2005) ("The elements of common law fraud [] are largely the same as those of a Rule 10b-5 claim . . . ."). *See also Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104-05 (2d Cir. 2001) (confirming the need to establish the defendant's knowledge or recklessness to succeed on a common law fraud claim).

[81]    *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir. 1992)).

behavior or recklessness.'"[82]

Under the first prong, "[t]o show motive and opportunity, plaintiffs

must allege a likelihood that defendants could realize 'concrete benefits' through

the deception."[83]  "Insufficient motives [] include (1) the desire for the corporation

to appear profitable and (2) the desire to keep stock prices high to increase officer

compensation."[84]  The conduct of the defendants under the second prong must be

conduct that is "'highly unreasonable'" and which represents "'an extreme

departure from the standards of ordinary care . . . to the extent that the danger was

either known to the defendant or so obvious that the defendant must have been

aware of it.'"[85]

## IV.  DISCUSSION

---

[82]     *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).

[83]     *Suez Equity Investors*, 250 F.3d at 100 (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)).

[84]     *Kalnit*, 264 F.3d at 139.

[85]     *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) (quoting *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978)). Both plaintiffs and defendant Gross agree that plaintiffs must either show a motive and opportunity or circumstantial evidence of reckless or conscious behavior in order to satisfy the scienter element. *See* Plaintiffs' Memorandum of Law in Opposition to the Motion of Defendants for Summary Judgment ("Pl. Mem.") at 10; *see* Memorandum of Law in Support of Defendant Heiman Gross' Motion for Summary Judgment at 10.

### A.    Plaintiffs' Claims Against the Enzo Defendants

#### 1.    The Glaser Action Bars This Litigation

##### a.    Privity of the Parties

The Enzo defendants argue that "[t]he facts adduced in discovery demonstrate that [p]laintiffs Lewicki, Cavanagh[,] and Pope are privies of Glaser, and so closely tied to him that the outcome of the Glaser Action should have preclusive effect."[86]  Plaintiffs counter that their claims should not be barred by res judicata because plaintiffs neither gave Glaser the authority to act on their behalf nor actually controlled Glaser's action.[87]  In support, they note that Lewicki's retainer agreement with Rovell was neither signed by Glaser or any of his family members who were plaintiffs in the Glaser Action.[88]  However, plaintiffs' argument is belied by the other evidence defendants have presented to the Court.

Lewicki, Cavanagh, and Pope each admitted at their depositions that a litigation agreement had existed among themselves and Glaser.  This was confirmed by Glaser at his deposition.  The intention of such agreement was that

---

[86]    *See* Memorandum of Law in Support of the Motion for Summary Judgment by Defendants Enzo Biochem, Inc. and Barry Weiner ("Enzo Def. Mem.").

[87]    *See* Pl. Mem. at 14.

[88]    *See id.*

Glaser would litigate his action first, and if he succeeded, res judicata would be invoked to direct a similar outcome for the respective claims of the other participants to the agreement. In addition, each of the participants agreed to contribute to Glaser's legal expenses in return for a share of any potential recovery from the Glaser Action and vice versa. Most importantly, any settlement of the Glaser Action would require the approval of both Glaser and one other participant to the agreement.[89] Thus, for all intents and purposes, Glaser represented the interests of Lewicki, Cavanagh, and Pope in the Glaser Action. In addition, payment by Lewicki, Cavanagh, and Pope of a portion of Glaser's attorney's fees and their share in any potential recovery in the Glaser Action gave them a vested interest in that lawsuit.

### b.    Identity of Claims

Plaintiffs also contend that res judicata cannot apply in this case because the claims asserted in the Glaser Action and by Lewicki, Cavanagh, and Pope in this action are not identical. However, the Court previously compared the

---

[89]    Although plaintiffs repeatedly argue that the signatures of the other participants to the agreement are absent from Lewicki's retainer agreement with Rovell, Glaser, Lewicki, Cavanagh, and Pope have all testified regarding the existence of such an agreement and that they agreed to its terms and signed it. In addition, plaintiffs have failed to proffer evidence to show that the agreements signed by Cavanagh and Pope excluded the provision stating that any settlement of the Glaser action would require the approval of Glaser and another participant.

complaints in both actions in *Hunt I* and determined that their claims were virtually identical.[90]  For instance, Glaser and his family also alleged claims of common law fraud against defendants.[91]  Both sets of complaints also specifically allege misrepresentations by Enzo and its officers and directors relating to the success of the development of its HIV treatment, the clinical trials that took place, its patent estate, and its stealth vector.[92]  I therefore find that the claims in this action and in the Glaser Action are "related in time, space, origin, or motivation" and "they form a convenient trial unit."[93]

### c.    Differences in Law

Plaintiffs argue further that the law that was applied in the Glaser

---

[90]    *See Hunt I*, 471 F. Supp. 2d at 398 n.49.  This is not surprising considering that all of the parties were represented by Rovell at the time they filed their complaints.

[91]    *See Glaser*, 464 F.3d at 475.

[92]    *See id.* at 476; Third Am. Compl. ¶ 2.  Similar claims against a company by two shareholders in connection with the same transaction or event is not – by itself – enough to bind one shareholder to the result in an action brought by the other.  However, that Glaser, Lewicki, Cavanagh, and Pope had entered into a litigation agreement and that Glaser had advanced the same claim in the Glaser Action makes it fair to apply res judicata to bar the claims of the other three.

[93]    *Waldman*, 207 F.3d at 108 (quotation marks omitted).  Because there is no dispute that the dismissal of the Glaser Action was a final judgment on the merits and that the Eastern District of Virginia and the Fourth Circuit are courts of competent jurisdiction, I do not discuss these requirements for res judicata in detail.

25

Action is different from the law that is to be applied in this case.[94] This argument similarly fails. Although Virginia law – and not New York law – was applied in the Glaser Action, the elements of common law fraud under Virginia law are identical to those required under New York law. In the Glaser Action, the Fourth Circuit noted that in order for plaintiffs to succeed on their common law fraud claim, they were required to prove "'(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled.'"[95] These are the same elements this Court has held must be proven under New York law.[96]

### d. Full and Fair Opportunity

Finally, all of the evidence regarding the litigation agreement among Glaser, Lewicki, Cavanagh, and Pope suggest that plaintiffs had a full and fair opportunity to litigate their claims in the Glaser Action. *First*, the agreement

---

[94]   *See* Pl. Mem. at 14.

[95]   *See* Glaser, 464 F.3d at 476-77 (quoting *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 826 (4th Cir. 1999)).

[96]   *See Hunt I*, 471 F. Supp. 2d at 399 (noting that "[t]o recover damages for fraud under New York law, a plaintiff must prove: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.").

26

ensured that the interests of the latter three were aligned with Glaser's interests because they each had a stake in the outcome of Glaser's action through their contribution to his attorney's fees and their share of his recovery. *Second*, their rights to receive payments were identical to Glaser's because they were all conditioned by the litigation agreement. *Third*, Lewicki, Cavanagh, and Pope acknowledged that adjudication of the Glaser Action would have consequences for them – they testified that the intention of entering the agreement was to ensure that any victory in the Glaser Action would be used to obtain success in their own claims.[97]

Nevertheless, plaintiffs complain that they had access only to limited discovery in the Glaser Action and repeatedly assert that defendants had engaged in several instances of deceptive conduct in that case.[98] These objections may be relevant to whether plaintiffs had a full and fair opportunity to litigate their claims in the Glaser Action, and I therefore analyze each to determine whether any

---

[97] *See Buechel*, 97 N.Y.2d at 305 (holding that two partners at a law firm were in privity with a third partner and had had the full and fair opportunity to litigate their claims when the third partner had litigated them because (1) their interests were "aligned" with that of the third partner, (2) their "right to receive payments were coextensive" with the right of the third partner, and (3) they recognized that adjudication of the third partner's claim would have "consequences for them.").

[98] *See* Pl. Mem. at 1, 15.

alleged misconduct had the effect of detrimentally impacting Glaser's – and, by agreement, Lewicki's, Cavanagh's, and Pope's – ability to effectively litigate the prior action.

*First*, with respect to plaintiffs' argument regarding limited discovery, there is no requirement that a plaintiff receive an opportunity for discovery prior to being subject to res judicata. For example, dismissal of an action for failure to state a claim has been considered a final judgment on the merits that has res judicata effects.[99]

*Second*, plaintiffs allege that the Enzo defendants have acknowledged the making of a tape recording of the 2000 Annual Shareholders' Meeting ("2000 ASM"), during which many of the alleged misrepresentations occurred, but have also admitted that it was subsequently lost.[100] They also contend that defendants' counsel had "repeatedly" misrepresented to the courts in the Glaser Action that no sales of Enzo stock were made in March and April 2000 by the Weiner and

---

[99]     *See Berrios v. New York City Housing Auth.*, 564 F.3d 130, 134 (2d Cir. 2009). Nevertheless, it should be noted that plaintiffs acknowledge that Glaser had limited discovery in connection with his personal bankruptcy proceedings, *see* Pl. Mem. at 1, and Enzo and Weiner point out that a number of documents that plaintiffs' counsel, Dan Brecher, has included in his declaration – appended to plaintiffs' response papers – were obtained through discovery in Glaser's bankruptcy proceedings. *See* Chase Rep. Decl. ¶ 5.

[100]     *See* Pl. Mem. at 1.

Rabbani children's trusts.[101]  Plaintiffs therefore argue that they are entitled to an

inference that the alleged misrepresentations were in fact made at the 2000 ASM

by the Enzo defendants.[102]   And plaintiffs appear to suggest that this Court should

find that plaintiffs did not have a full and fair opportunity to litigate their claims in

the Glaser Action because of the alleged misrepresentations made to the Virginia

courts regarding the Enzo defendants' sale of stock.[103]

However, there has been no allegation of spoliation with respect to

the 2000 ASM tape and no evidence that it was destroyed after the anticipation of

litigation.  In addition, the Glaser Action was dismissed on the basis of the

pleadings,[104] and thus all allegations made in Glaser's complaint were assumed to

be true, including the misrepresentations allegedly made at the 2000 ASM and

regarding the sale of stock by Weiner and the Rabbanis.

Plaintiffs also cite to the New York Court of Appeals decision of

*Green v. Santa Fe Indus., Inc.* to argue that res judicata should not apply to bar

---

[101]    *See id.*

[102]    *See id.*

[103]    *See id.*

[104]    *See Glaser*, 464 F.3d at 476 (noting that the district court's dismissal
of plaintiffs' claims occurred on defendants' motion to dismiss).

29

their claims in this case.[105]  However, the facts of *Green* are distinguishable from the facts of this case.  In *Green*, defendants – a company and its subsidiaries – argued that res judicata barred the claims of the Borgs, a group of minority shareholders, because they had been "deeply involved" in the action brought by another group of minority shareholders, the Greens.[106]  The evidence showed that although the Borgs and the Greens owned separate blocks of stock, the Borgs had "monitored the proceedings and received reports from the Greens' counsel [] who, the defendants claim, also represented the Borgs' interests in the [Green] action."[107]  The Court of Appeals nevertheless concluded that whether the Borgs were in privity with the Greens was an issue of fact that could not be resolved on summary judgment, noting in particular that "there was no indication that the prior action 'was managed as [the Borgs] thought it should be.'"[108]

By contrast, in this case, the relationship between Glaser and Lewicki, Cavanagh, and Pope is much closer.  Lewicki, Cavanagh, and Pope all contributed to the litigation of the Glaser Action and would have shared in any

---

[105]    *See* 70 N.Y.2d 244 (1987).

[106]    *See id.* at 254.

[107]    *Id.* at 253-54.

[108]    *Id.* at 254 (quoting *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 278 (1970)).

recovery Glaser received. In addition, the agreement required that any settlement in the Glaser Action would have to be approved by Glaser and at least one of the other participants to the agreement. It therefore cannot be disputed that Lewicki, Cavanagh, and Pope had control – albeit settlement control – in the Glaser Action.

### e.   Public Policy Considerations

Finally, res judicata should apply in this case to bar the claims of Lewicki, Cavanagh, and Pope because public policy overwhelmingly favors it. The deposition testimony of all three demonstrate that the intent of entering into the litigation agreement was to succeed on Glaser's claims and then invoke res judicata to ensure a similar outcome in their own claims. It would simply be unfair to allow Glaser, Lewicki, Cavanagh, and Pope to take a "second bite at the apple" when they intended to use res judicata to their advantage had the Glaser Action gone their way. Allowing their claims to proceed would send a strong signal to other plaintiffs that they can "test the waters" by having only one member of their group institute an action first. If that member failed, then the others would be able to learn from his mistakes and initiate another action. If that member succeeded, then the others would bring their claims and argue that the same outcome should apply to their claims. Either way, they would take no risk. This is precisely the situation that res judicata seeks to prevent. The claims of Lewicki,

31

Cavanagh, and Pope against the Enzo defendants must therefore be dismissed.

### 2. California's Statute of Limitations Is Not Tolled

California's tolling statute does not apply in this case because the

Enzo defendants were amenable to personal jurisdiction in California. The

evidence shows that from 2000 to 2005, a significant portion of Enzo's total

revenue was derived from the sale of goods in California. In addition, Enzo

retained a sales agent in the state[109] and one of its largest distributors is based in

California. Finally, Weiner frequently visited California as Enzo's President in

order to conduct business in the state. Significant revenues based on goods sold

within the state and frequent business trips to the state have been found to be

sufficient to indicate that the defendant has "extensive and wide-ranging" business

in California.[110]

Further, even if California did not have general jurisdiction,

California certainly had specific jurisdiction over the Enzo defendants during the

---

[109]    While plaintiffs complain that Enzo had no sales agent in California in 2000, *see* Pl. Counter 56.1 ¶ 126, this is only one of the many Enzo contacts with California.

[110]    *Neadeau v. Foster*, 129 Cal. App. 3d 234, 239-40 (Cal. Ct. App. 1982). *Cf. Luberski, Inc. v. Oleficio F.lli Amato S.R.L.*, 89 Cal. Rptr. 3d 774, 778 (Cal. Ct. App. 2009) (holding that a history of shipping olive oil to a small number of customers within the state did not represent "substantial, continuous, and systematic contacts" with the state).

relevant period. The HIV clinical trials which are the focus of plaintiffs'

allegations were conducted at UCSF. The Enzo defendants therefore could have

foreseen that they would be subject to litigation in California. In addition, Roberts

testified at his deposition that Weiner met with him on one of his visits to

California and made a number of misrepresentations to him during that meeting,

including remarks about the success of the HIV trials and the company's transition

to Phase II of the trials.[111] I therefore find that the Enzo defendants were amenable

to personal jurisdiction in California during the relevant period. Accordingly,

California's tolling statute does not apply, and Roberts is time-barred from

proceeding with his claim.[112]

---

[111] *See* Transcript of Deposition of Ken Roberts ("Roberts Dep. Tr."),
Ex. D to Chase Decl., at 122:2-123:4 (attesting that Weiner had met with him and
given him similar assurances to that which is alleged to have been given at the
2000 ASM: "Everything was [] moving forward, we don't see any problems,
we've had quite a bit of success in our trials . . . we will be moving forward into
Phase II"). *See also Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 114
(Cal. Ct. App. 1990) (holding that defendants were amenable to personal
jurisdiction where one defendant made fraudulent misrepresentations to plaintiff
while in California and another defendant "purposely directed" misrepresentations
at plaintiff in California even though communications were made while defendant
was in New York).

[112] *See Hunt I*, 471 F. Supp. 2d at 403 ("[A]ll plaintiffs' claims are time-
barred unless they can show that the limitations period has been tolled."). 
Plaintiffs argue that counsel for the Enzo defendants had threatened plaintiffs'
counsel with sanctions prior to the Glaser Action if he filed claims against them,
apparently suggesting that the statute of limitations should not bar them from

33

### B.    Plaintiffs' Claims Against Gross

#### 1.    The Glaser Action Bars This Litigation

Gross was a defendant in the Glaser Action.  The Eastern District of Virginia dismissed claims against Gross in the Glaser Action because it held that his alleged statements were not actionable.[113]  The Fourth Circuit affirmed the district court's decision.[114]  As such, Lewicki, Cavanagh, and Pope are bound by the dismissal of Glaser's claims against Gross in that action under the doctrine of res judicata for the same reasons I discussed above.  The claims of Lewicki, Cavanagh, and Pope must therefore be dismissed.

#### 2.    Plaintiffs Have Proffered No Evidence of Gross' Scienter

Even if the claims of Lewicki, Cavanagh, and Pope were not barred by res judicata, they – and Roberts' claim – must nevertheless be dismissed because plaintiffs have failed to raise a genuine issue of material fact with respect

---

bringing their claims.  *See* Pl. Mem. at 6.  However, these threats – although allegedly made prior to the Glaser Action, did not stop Glaser from instituting his lawsuit against the Enzo defendants.  *See* 12/20/02 Transcript of Motion Proceedings Before the Eastern District of Virginia in the Glaser Action, Ex. I to Declaration of Dan Brecher, plaintiffs' counsel, at 39:24-40:6.  There is no explanation for plaintiffs' failure to take similar action.

[113]    *See Glaser*, 464 F.3d at 477.

[114]    *See id.*

34

to Gross' scienter. Plaintiffs have not proffered any evidence to show that Gross was reckless in making the alleged misrepresentations. Further, they have failed to present evidence that he obtained a "concrete" benefit from making the alleged false statements.[115]   Plaintiffs merely reiterate that Gross had made the alleged misrepresentations and contend that "he should have known better" and that "these statements evidence scienter."[116]   However, more than mere conclusory allegations are necessary to defeat summary judgment.[117]   Accordingly, plaintiffs' claims against Gross must fail.

## V.   CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted. The Clerk of the Court is directed to close the following motions: Document Nos. 98 and 103 in 06 Civ. 170; Document Nos. 78 and 83 in

---

[115]   Indeed, plaintiffs have failed to demonstrate that Gross sold any Enzo stock in 2000 or 2001. *See also* Schedule D of Gross' Tax Returns, Ex. B to Declaration of Heiman Gross (indicating that Gross never sold Enzo stock during the relevant time period).

[116]   Pl. Mem. at 12.

[117]   *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory [] or based on speculation.") (citations omitted).

35

06 Civ. 213; and Document Nos. 44 and 49 in 06 Civ. 6347.  The Clerk of the

Court is also directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 15, 2009

## -Appearances-

**For Plaintiffs:**

Dan Brecher, Esq.
Law Offices of Dan Brecher
99 Park Avenue, 16th Floor
New York, NY 10016
(212) 286-0747

**For the Enzo Defendants:**

Donald H. Chase, Esq.
David A. Piedra, Esq.
Gayle Elise Pollack, Esq.
Morrison Cohen, LLP
909 Third Avenue
New York, NY 10022
(212) 735-8600

**For Defendant Heiman Gross:**

Angelo Anthony Stio, III, Esq.
Pepper Hamilton LLP
301 Carnegie Center
Suite 400
Princeton, NJ 08543
(609) 951-4125

K. Stewart Evans, Jr., Esq.
Pepper Hamilton LLP
Hamilton Square
600 14th Street, NW
Suite 600
Washington, DC 20005
(202) 220-1230