UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

FRANCIS SCOTT HUNT and SHUNDRA          :
CHERI HUNT, individually and as Trustee :
for IAN CHRISTOPHER HUNT,               :    OPINION AND ORDER
LAWRENCE A. MCMAHON                     :
and JUDITH J. MCMAHON, PAUL D.          :
CAVANAGH individually and as Trustee    :
for the PAUL D. CAVANAGH TRUST,         :    06 Civ. 170 (SAS)
and VIRGINIA POPE,                      :
                                        :
             Plaintiffs,                :
                                        :
          - against -                   :
                                        :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/12/11

ENZO BIOCHEM, INC., HEIMAN GROSS,       :
BARRY WEINER, ELAZAR RABBANI,           :
SHARIM RABBANI, JOHN DELUCCA,           :
DEAN ENGELHARDT, and JOHN DOES 1-50,    :
                                        :
             Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
KEN ROBERTS,                            :
                                        :
             Plaintiff,                 :    06 Civ. 213 (SAS)
                                        :
          - against -                   :
                                        :
ENZO BIOCHEM, INC., et al.,             :
                                        :
             Defendants.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
PAUL LEWICKI,                           :
                                        :
             Plaintiff,                 :    06 Civ. 6347 (SAS)
                                        :
          - against -                   :
                                        :
ENZO BIOCHEM, INC., et al.,             :

:

**Defendants.**                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Enzo Biochem, Inc., Heiman Gross, Barry Weiner, Elazar Rabbani, Sharim Rabbani, John Deluca, Dean Engelhardt, and John Does 1-50 (the "Enzo Defendants") bring this motion for sanctions against plaintiff Paul Lewicki and his former counsel, Dan Brecher.  The Enzo Defendants allege that Lewicki and Brecher violated this Court's Order for the Protection and Exchange of Confidential Information (the "Protective Order") by improperly giving Lawrence Glaser confidential materials.  The Enzo Defendants further allege that Glaser used those materials in support of a motion to re-open his lawsuit against them in Virginia (the "Virginia case") under Federal Rule of Civil Procedure 60(b).[1]  The Enzo Defendants seek to recoup the expenses associated with responding to that motion, and to recover their confidential materials.[2]

The Court held an evidentiary hearing to resolve the disputed issues of

---

[1]    *See* 1/28/11 Memorandum of Law in Support of Defendant Enzo Biochem Inc.'s Opposition to Plaintiff Lawrence F. Glaser's Motion to Vacate Judgement ("Va. Opp. Mem."), Ex. 4 to Affidavit of Robert J. Bergson, Counsel for Non-Party Dan Brecher.  Glaser is not a party to this case.

[2]    Enzo Defendants' Memorandum of Law in Support of Motion for Sanctions ("Enzo Mem.") at 1-2.

fact raised by the motion.  The hearing was held on July 7, 2011 and on July 26, 2011.  Both Lewicki and Brecher testified at the hearing.[3]  Brecher and the Enzo Defendants also submitted a number of exhibits as well as post-hearing memoranda.  Brecher argues that he complied with the Protective Order by turning over documents solely to Lewicki, and that it would therefore be inappropriate to sanction him.[4]  Lewicki argues that he should not be sanctioned because he did not know that the documents Glaser had access to were confidential, and because Brecher failed to make him aware of his duties under the Protective Order.[5]  For the reasons set forth below, the motion by the Enzo Defendants is granted in its entirety.

## II.    BACKGROUND[6]

### 1.    The Virginia Case

In 2001, Lewicki signed a retainer agreement with attorney Michael

---

[3]      Brecher was represented by counsel.  Lewicki appeared pro se.

[4]      Non-Party Dan Brecher's Memorandum of Law in Opposition to Motion for Sanctions ("Brecher Mem.") at 2.

[5]      *See* 7/26/11 Hearing Transcript ("Tr.") at 90:15-17 and 79:2-17.

[6]      Glaser wrote to the court on August 3, 2011 seeking permission to submit additional material regarding this motion.  Because Glaser is not a party to this case, and because he declined several invitations to attend the hearing on this motion, his request is denied.  His August 25 letter to the court is irrelevant to this motion.

Rovell with a view towards filing a lawsuit against the Enzo Defendants.  As part of the retainer agreement, Lewicki, Glaser, and most of the other plaintiffs in this case planned to sue the Enzo Defendants for misrepresenting the effectiveness of Enzo's products in order to inflate the price of Enzo stock and reap a profit.[7]  The plan called for Glaser to win his case in Virginia first, and for the rest of the group to use that hoped-for success in a subsequent case in New York.[8]

In line with the plan, Glaser filed the Virginia case in 2002.[9]  After losing in the district court, Glaser appealed, and the case was remanded for further proceedings.  The Enzo Defendants then successfully moved for dismissal, whereupon Glaser brought a second appeal in 2006.  The United States Court of Appeals for the Fourth Circuit denied him any relief, thereby ending his case.[10]

### 2.  The New York Case

#### A.  From Filing to Summary Judgment

The plaintiffs in the New York case were initially represented by

---

[7]     *See Hunt v. Enzo Biochem, Inc.*, Nos. 06 Civ. 170, 06 Civ. 213, 06 Civ. 6347, 2009 WL 1683990, at *1 (S.D.N.Y. June 15, 2009).

[8]     *See id.*

[9]     *See* Va. Opp. Mem. at 1.

[10]    *See Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 475-80 (4th Cir. 2006).

Michael Rovell, the same attorney who represented Glaser in the Virginia case. They filed suit in 2006 and by 2008 were on their third amended complaint, which raised common law fraud claims.[11]  Rovell died while the case was pending, and Glaser helped the plaintiffs find Brecher to replace him; Glaser also gave Lewicki a $20,000 loan to pay his share of the retainer.[12]  Because the claims in the New York case were closely related to those in the Virginia case, Lewicki encouraged Brecher to consult with Glaser.[13]  The two met several times, and Glaser eventually gave Brecher documents from the Virginia case (the "Virginia files").[14]  Along the way, Brecher learned that Glaser had a substantial financial interest in the New York case.[15]

Brecher and Donald Chase, counsel for the Enzo Defendants, stipulated to the terms of a Protective Order which was entered on March 25, 2008.[16]  Lewicki's understanding of the Protective Order is unclear.  At the hearing, Lewicki testified that he heard of the Protective Order, but also that he

---

[11]     *See Hunt*, 2009 WL 1683990, at *2.

[12]     *See* Tr. at 27:20-28:14.

[13]     *See id.* at 28:11-14.

[14]     *See id.* at 95:1-5, 105:17-20.

[15]     *See id.* at 108:13-109:13.

[16]     *See* Docket No. 85.

never saw it.[17]  He claims that all he understood about the Protective Order was that "confidential documents needed to be kept confidential."[18]  Brecher claims, however, that he told Lewicki about the Protective Order before it was filed, and that he discussed it in great detail with Lewicki before Lewicki's deposition.[19]

On April 11, 2009, Lewicki requested that Brecher "ask [Judge Scheindlin] to make [the Protective Order] formally. . . binding on" Glaser, so that Glaser could have access to Enzo's confidential documents.  After stating that he declined Glaser's personal requests on the matter, Brecher told Lewicki that he would not seek modification of the Protective Order and threatened to withdraw as counsel if Lewicki petitioned the court on his own.[20]  Glaser repeated his requests in March 2009,[21] and Brecher denied those as well.[22]

---

[17]     *See*. Tr. at 12:16-13:11.

[18]     *Id.* at 37:2-3.

[19]     *See id.* at 98:6-100:21.  The Enzo Defendants also provided Lewicki with a copy of the protective order when responding to Lewicki's appeal to the Second Circuit.  *See* 5/28/10 Letter from Enzo Defendants to the Second Circuit Clerk of Court, Ex. I to Enzo Mem.

[20]     *See* 4/11/09 E-mail Exchange Between Brecher and Lewicki, Ex. F to Enzo Mem.

[21]     *See* 3/19/09 E-mail from Glaser to Brecher, Ex. K to Enzo Mem.; 3/20/09 E-mail from Glaser to Brecher, Ex. L to Enzo Mem.

[22]     *See* 6/29/09 E-mail from Glaser to Brecher, Ex. DB 6 to Brecher Mem.

The Enzo Defendants moved for summary judgment, which this Court granted in June 2009.[23]  The remaining plaintiffs appealed, and several were granted permission to proceed in forma pauperis.[24]  Brecher does not represent them on appeal.[25]

### B.    Post-Summary Judgment

After the Enzo Defendants won summary judgment, Lewicki asked if he could pick up the plaintiffs' files (the "New York files") from Brecher's office.[26]  In an e-mail dated July 6, 2009, Brecher told Lewicki that he could not pick up the New York files for two reasons.  *First*, in order to release Lewicki's personal files, he needed authorization from the Trustee in Lewicki's bankruptcy proceeding.  *Second*, in order to release the rest of the New York files, he needed authorization from the other plaintiffs.[27]

Glaser also asked Brecher to return the Virginia files.[28]  On July 22,

---

[23]    *See Hunt*, 2009 WL 1683990, at *10.

[24]    *See* Docket Nos. 123-127, 130, 133.

[25]    *See* Brecher Mem. at 1.

[26]    *See* Tr. at 109:19-25.

[27]    *See* 7/6/09 E-mail Exchange Between Lewicki and Brecher, Ex. DB 9 to Brecher Mem.

[28]    *See* 7/20/09 E-mail Exchange Between Brecher and Glaser, Ex. O to Enzo Mem.

2009, he e-mailed Brecher stating that he and Lewicki would come by the following day and "grab everything."[29]  Brecher gave Glaser two boxes of files from the Virginia case the next day, but did not give him any of the New York files.[30]

While waiting for Lewicki to get the Trustee's permission to receive the New York files, Brecher e-mailed Chase on August 24, 2009 to inform Chase that he intended to release the New York files to the plaintiffs.  Chase asked Brecher not to release anything marked "highly confidential," and to delay releasing documents marked "confidential" because he suspected that information contained therein was leaked on an Internet forum.  Although Brecher complied with Chase's request regarding the "highly confidential" documents,[31] Brecher and Chase continued to disagree on how to proceed with regard to "confidential" documents.  Brecher reiterated his belief that the plaintiffs were entitled to the

---

[29]     *See* 7/22/09 E-mail from Glaser to Brecher, Ex. N to Enzo Mem.

[30]     *See* 7/23/09 Letter Confirming Release of Virginia Case Files to Glaser, Ex. DB 17 to Brecher Mem.  The Enzo Defendants characterize this transfer as one of "Plaintiffs' files," apparently based on Glaser's expressed desire to retrieve the entire file for the instant case.  Enzo Mem. at 10.  While the record could support the inference that Glaser wanted to pick up the entire file on July 23, there is no doubt that the only documents transferred from Brecher to Glaser on that day were Glaser's own documents from the Virginia case.

[31]     *See* Tr. at 112:4-7.

entire New York file and gave Chase a week to respond.  After that week passed, Brecher e-mailed Chase, simply asking "Nu?"[32]  Chase did not respond.

By September 15, 2009, Lewicki had obtained permission from the bankruptcy Trustee.[33]  He asked if he could pick up the New York files on October 2, 2009.[34]  Glaser told Brecher that he would be coming along,[35] and the two arrived at Brecher's office as planned.  Lewicki signed for the files,[36] and Brecher handed them over to both men, who proceeded to move them to Glaser's truck. Although he knew that there were confidential materials in the New York files, Brecher testified that he saw "nothing improper" about the situation, and insists that he reminded Lewicki and Glaser of the requirements of the Protective Order.[37] Lewicki, however, claims that he did not know that the files turned over that day

---

[32]     9/3/09 E-mail Exchange Between Brecher and Chase, Ex. DB 18 to Brecher Mem.  "Nu" is a Yiddish expression meaning "Well?"  *See* English-Yiddish, Yiddish-English Dictionary: Romanized 92 (David C. Gross ed., Hippocrene Books 1995).

[33]     *See* 8/25/09 E-mail Exchange Between Brecher, Lewicki, and Virginia Pope, Ex. DB 20 to Brecher Mem.; 9/15/09 Letter from Brecher to Lewicki's Bankruptcy Trustee, Ex. DB 24 to Brecher Mem.

[34]     *See* 9/28/09 E-mail Exchange Between Brecher and Lewicki, Ex. DB 26 to Brecher Mem.

[35]     *See* 10/1/09 E-Mail from Glaser to Brecher, Ex. Lewicki 2.

[36]     *See* 10/2/09 Building Package Pass, Ex. DB 30 to Brecher Mem.

[37]     Tr. at 113:4-117:16.

contained any confidential material.[38]

Lewicki and Glaser drove from Brecher's office to the home of a common friend in New Jersey, where they stored the New York files.[39]  At some point before October 6, 2009, Lewicki went through the files and complained to Brecher that a specific document was missing.[40]  Glaser eventually took the files from New Jersey to an attorney who was to help Lewicki with his appeal.  When that attorney declined to take the case, Glaser took the files back,[41] and later brought selected documents to a meeting with Lewicki at a rest stop on the New Jersey Turnpike.[42]  Lewicki testified that at least three of the documents they went over at that meeting were marked "confidential," and that Glaser used those documents to support his Rule 60(b) motion in the Virginia case.[43]  Glaser has retained all of the New York files since then.[44]

---

[38]    *See id.* at 79:2-11.

[39]    *See id.* at 39:16-40:8.

[40]    *See* 10/7/09 E-mail Exchange Between Lewicki and Brecher, Ex. DB 32 to Brecher Mem.

[41]    *See* Tr. at 40:12-41:12.

[42]    *See id.* at 45:5-17.

[43]    *See id.* at 48:3-49:10.

[44]    *See id.* at 89:5-13.  In addition to the materials that the Enzo Defendants complain were improperly used in the Rule 60(b) motion, Glaser's

## III.   CIVIL CONTEMPT SANCTIONS FOR FAILURE TO COMPLY WITH A COURT ORDER[45]

Under Federal Rule of Civil Procedure 37(b)(2), a court may "treat[] as contempt . . . the failure to obey any order except an order to submit to a physical or mental examination."  The Advisory Committee Note makes it clear that noncompliance with protective orders issued pursuant to Rule 26(c) may be sanctioned under this provision,[46] and the Second Circuit generally instructs that "[a] party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."[47]  Furthermore, under

_____

latest letter to the court references and provides a copy of an additional confidential document, Bates stamped E 005873.  *See* 9/26/11 Letter from Glaser to the Court at 8.

[45]    While a court also has the "inherent power" to sanction noncompliance with protective orders, it should avoid using such powers when a rule – in this case Rule 37 – applies directly to the same conduct.  *See Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 n.7 (2d Cir. 2010).  Therefore, although both sides mention inherent power sanctions in their briefs, I do not discuss them in this opinion because Rule 37 is sufficient.

[46]    *See* 1970 Advisory Committee Note to Fed. R. Civ. P. 37 at 207 (2011 ed.).  *See also* Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 48(A)(2) (4th ed. 2008).

[47]    *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

Rule 37(b)(2)(C), a finding of contempt may also lead to an award of "reasonable expenses, including attorney's fees, caused by the failure [to comply]," payable by either the offending party, its attorney, or both.

While a court is "free to consider the full record in the case in order to choose the appropriate sanction,"[48] a finding of willfulness or bad faith is not a prerequisite to a contempt finding under Rule 37.[49]  Furthermore, even if noncompliance is eventually cured and does not result in prejudice to the moving party, a court may sanction the noncompliant party because Rule 37 serves punitive and deterrent functions in addition to being a tool to compel compliance.[50]

## IV.    FINDINGS OF FACT

### 1.    Undisputed Facts

#### A.    Facts About the Transfer of the New York Files

---

[48]    *Southern New England Tel. Co.*, 624 F.3d at 144.

[49]    *See Paramedics*, 369 F.3d at 655.  The Second Circuit has not made it clear that a finding of bad faith or willfulness is necessary to a finding of civil contempt under Rule 37.  *Compare Cretella v. Liriano*, 370 Fed. App'x 157, 159 (2d Cir. 2010) (summary order) (noting that a court "must find bad faith by 'clear evidence'" in order to make a finding of civil contempt) *with Utica Coll. v. Gordon*, 389 Fed. App'x 71, 73 (2d Cir. 2010) (summary order) (noting that "no . . . showing [of willfulness or bad faith] is required.") Yet another Second Circuit decision concluded that the issue of whether a finding of willfulness or bad faith is required "remains an open one."  *Jacobs v. Citibank, N.A.*, 318 Fed. App'x 3, 5 n.3 (2d Cir. 2008) (summary order).

[50]    *See Southern New England Tel. Co.*, 624 F.3d at 148-49.

Based on the materials in the record as discussed above, I find that the following facts are undisputed: (1) A Protective Order was in place that did not allow Glaser to access Enzo's confidential materials.  (2) Brecher knew that Glaser had a personal and financial interest in the New York case.  (3) Brecher released the New York files into the joint physical custody of Lewicki and Glaser on October 2, 2009.  (4) Lewicki and Glaser stored the New York files in New Jersey.  (5) Glaser took the files from New Jersey to an attorney – who ended up rejecting the case – for review in preparation for Lewicki's appeal.  (6) Glaser and Lewicki reviewed confidential documents together at a rest stop on the New Jersey Turnpike.  (7) Glaser used the same confidential documents in an attempt to re-open the Virginia case.  (8) Glaser currently retains possession of the New York files.[51]

### B.    Facts About Attorneys' Fees

The Enzo Defendants seek $50,067 in fees and $987.85 in costs for the work of two attorneys, Donald Chase and Gayle Pollack of Morrison Cohen LLP.  Chase is a partner whose billing rate is $590 per hour, and Pollack is senior counsel whose billing rate is $430 per hour.  The Enzo Defendants also seek

---

[51]    While Brecher should have known that releasing files to Glaser and Lewicki was inappropriate under the Protective Order, I find that his conduct – while sanctionable for the reasons discussed below – does not rise to the level of being willful or in bad faith.

$15,894.50 in fees and $612.36 in costs for the assistance of Robert Vieth, a partner in the Reston, Virginia office of Cooley LLP, whose billing rate is $735 per hour.[52]  The total amount the Enzo Defendants seek is $67,561.71.  Neither Brecher nor Lewicki deny that the Enzo Defendants actually paid that amount to respond to Glaser's Rule 60(b) motion in the Virginia case, or that such an amount is reasonable.[53]  I find that $67,561.71 is indeed a reasonable amount for attorneys' fees, taking into account the amount of work done and the number of lawyers involved.

### 2.    Disputed Facts

There are two key factual issues that must be resolved before I can determine whether sanctions against Lewicki and Brecher are appropriate.  These issues turn on the credibility of the witnesses and the exhibits offered by both parties at the hearing.

The first important issue is what documents Brecher actually released to Lewicki and Glaser on October 2, 2009.  As noted above, Brecher asserts that he told Lewicki that the files contained confidential materials that could not be shown

---

[52]    *See* 7/25/11 Declaration of Donald H. Chase, Counsel for Enzo Defendants at 2-4.

[53]    Notably, the Enzo Defendants do not seek any fees or costs related to this motion. *See id.* at 4 n.1.

to Glaser.[54]  Lewicki, however, testified that he did not know that any of the

materials released on that day were confidential; indeed, he testified that he

thought Brecher kept all the documents that were restricted by the Protective

Order.[55]  I find that Lewicki's testimony on this matter is not credible for three

reasons.  *First*, in an e-mail on which Lewicki was copied, Brecher clearly states

that the files he planned on releasing contained confidential materials.[56]  *Second*,

Brecher's testimony that he reminded Lewicki on October 2, 2009 that certain

materials were for plaintiffs' eyes only is highly credible.[57]  It is doubtful that

Brecher would have seen "nothing improper" about releasing confidential

materials to Lewicki and Glaser without such a reminder, and this testimony shows

how Brecher could believe – however wrongly – that confidentiality would in fact

be maintained.

> *Third*, even if Lewicki did not know on October 2, 2009 that the New

York files contained confidential materials, he states in an e-mail to Brecher that he

had reviewed the entire case file by October 6, 2009 in an attempt to find a specific

---

[54]     *See* Tr. 114:23-115:5.

[55]     *See id.* at 79:2-11.

[56]     *See* 8/25/09 E-mail Exchange Between Brecher, Lewicki, and Virginia
Pope, Ex. DB 20 to Brecher Mem.

[57]     *See* Tr. at 115:14-23.

document.  Because confidential materials are conspicuously stamped as such, it is exceedingly likely that Lewicki was aware by that date at the very latest that the files Brecher gave him contained confidential materials.  Accordingly, I find that the New York files released on October 2, 2009 contained confidential materials, and that Lewicki was aware of that by no later than October 6, 2009.

The second important issue regards Lewicki's understanding of the Protective Order.  Lewicki claims that he did not understand the distinction between "confidential" and "highly confidential" materials.[58]  Several facts make this claim dubious.  *First*, the Enzo Defendants provided him with a copy of the Protective Order.  *Second*, Brecher explained it to him in detail.  *Third*, Lewicki's e-mails to Brecher requesting modification of the Protective Order show that he understood that he was not to share confidential information of any kind with Glaser.  *Fourth*, there is no question that Lewicki saw confidential documents in the New York files, and that he reviewed such documents with Glaser.  At bottom, Lewicki's difficulty does not appear to be in understanding what the Protective Order requires, but simple dissatisfaction with the fact that Brecher entered into the Protective Order at all.[59]  Based on the foregoing, I find that Lewicki substantially

---

[58]     *See* Tr. at 21:21-23.

[59]     *See id.* at 90:15-17, 139:24-140:1.

understood the Protective Order and his responsibilities thereunder.

## V.    DISCUSSION

### A.    Sanctions Against Lewicki

The first question is whether the Protective Order is "clear and unambiguous." The Protective Order plainly lists the persons to whom confidential information could be disclosed and what duties those persons would have. Furthermore, it is clearly delineates the process by which confidentiality could be challenged, and how the Order itself could be modified. I therefore find that the Protective Order was clear and unambiguous. Furthermore, Lewicki was aware of his responsibilities under the Order.

The second question is whether the proof of Lewicki's noncompliance with the order is clear and convincing. As noted above, the facts concerning the physical transit of the New York files are not in dispute. Brecher released the New York files on October 2, 2009 to Lewicki and Glaser, who both stored them at a friend's home in New Jersey. Thereafter, Glaser took them to an attorney for his review, and later reviewed several confidential documents with Lewicki at a rest stop on the New Jersey Turnpike. Lewicki did not ask for the confidential documents back, and Glaser used them in his Rule 60(b) motion in the Virginia case and in his latest letter to this Court. I find that this evidence provides clear

and convincing proof that Lewicki allowed Glaser to access confidential materials, and, accordingly, clear and convincing proof of Lewicki's noncompliance with the Protective Order.

The final question is whether Lewicki made diligent efforts to comply with the Protective Order in a reasonable manner.  I conclude that Lewicki failed to take even basic precautions to protect the confidential materials.  *First*, Lewicki never told Glaser not to review the New York file,[60] which Lewicki explains by claiming that he was unaware that the New York file contained confidential material.[61]  That explanation is not credible; Lewicki knew that the New York file contained confidential materials, and simply did not make efforts to protect them from Glaser.  *Second*, Lewicki did not tell Glaser to return confidential documents that he knew were in Glaser's possession after meeting Glaser on the New Jersey Turnpike.  I therefore find Lewicki in civil contempt under Rule 37 for his failure to comply with the Protective Order.

### 2.    Sanctions Against Brecher

Because I have already found the Protective Order to be clear and unambiguous, there are only two remaining questions to address in deciding

---

[60]     *See id.* at 20:19-22.

[61]     *See id.* at 21:16-18.

whether Brecher should be sanctioned.  *First*, whether proof of Brecher's

noncompliance with the Protective Order is clear and convincing; and *second*,

whether Brecher diligently attempted to comply with the Protective Order in a

reasonable manner.

   Paragraph 12 of the Protective Order requires that anyone who is

given access to confidential materials must be made aware of the Protective Order

and given a copy of it.  Compliance with this requirement is irrelevant, however, if

the person to whom such access is given is not authorized to receive confidential

materials under Paragraphs 10 or 11.  Brecher does not argue that Glaser was

entitled to access any confidential materials.  Indeed, Brecher testified that prior to

releasing the New York files on October 2, 2009, he carefully segregated the

confidential materials because he knew Glaser was not entitled to access them.

    I have already found that Brecher physically delivered the New York

files – including confidential materials – into Glaser's possession.  Brecher

nonetheless argues that there was "nothing improper" about allowing Glaser to

assist Lewicki in moving them.  Because Glaser does not fall into any of the

categories described in Paragraphs 10 or 11, Brecher's opinion as to the propriety

of his actions is irrelevant.  By providing confidential materials to a person not

entitled to receive them, Brecher violated the Protective Order.  The evidence of

this fact is clear and convincing.

The only remaining question is whether Brecher failed to make diligent efforts at reasonable compliance with the Protective Order. As noted above, Brecher was in compliance with the Protective Order until October 2, 2009. He gave Glaser no "confidential" materials before then, and always protected the "highly confidential" materials.[62] His e-mail exchange with Chase also makes it clear that he continued to respect the seriousness of the Protective Order even after he stopped representing the plaintiffs.

What makes the act of transferring confidential materials into Glaser's possession deeply troubling – even if he only viewed Glaser as a stand-in for a paid moving company – is what Brecher knew about Glaser. As noted above, Brecher knew that Glaser was deeply involved with the plaintiffs – both with regard to finances and legal strategy – well before the date of the transfer. Brecher also knew that Glaser was insistent on gaining access to Enzo's confidential materials.[63] Given this knowledge, Brecher was obliged to do more than simply give Glaser and Lewicki instructions not to violate the Protective Order. Repeated warnings to play by the rules to a person with known incentives to do otherwise simply do not

---

[62]     *See id.* at 112:4-7.

[63]     *See id.* at 102:21-103:16.

meet the substantial burden of making a diligent attempt to comply with the Protective Order in a reasonable manner.  Accordingly, I find Brecher in civil contempt under Rule 37 for his failure to comply with the Protective Order.

### C.    Determination of Sanctions

Because I have found both Lewicki and Brecher in civil contempt under Rule 37 for violating the Protective Order, the only remaining issue is choosing the appropriate sanction.  As noted above, Rule 37 sanctions may include reasonable attorney's fees, insfoar as those fees are incurred as a result of the breach of a court order.  While the case law makes clear that joint and several sanctions against parties and their attorneys are available when the court finds both to be equally at fault,[64] the court has wide discretion to consider the entire record before it when selecting the appropriate sanction.[65]

I have already determined that $67,561.71 is a reasonable amount for attorneys' fees for the work done in responding to the violation of the Protective Order.  I have now found that both Lewicki and Brecher violated the Protective Order, and further find that they contributed equally to the costs the Enzo

---

[64]    *See Thomas E. Hoar, Inc. v. Sarah Lee Corp.*, 900 F.2d 522, 527 (2d Cir. 1990).

[65]    *See Southern New England Tel. Co.*, 624 F.3d at 144.

Defendants incurred.[66]

Notably, however, Lewicki is in bankruptcy proceedings, and is therefore unlikely to be able to pay his fair share of a joint and several sanction. Therefore, a joint and several sanction would be tantamount to a sanction against Brecher alone. Taking this into consideration, I find that Brecher's lack of bad faith should be given some weight as part of the "full record" that I may consider when choosing the appropriate sanction. Accordingly, I find that imposing a sanction of fifty percent of the Enzo Defendants' fees and costs against each of Brecher and Lewicki is the most appropriate way to resolve this matter.

## VI.   CONCLUSION

Brecher and Lewicki each violated the Protective Order, leading to Glaser's misuse of confidential information in his Rule 60(b) motion in the Virginia case.  It is therefore ORDERED that:

Pursuant to this Court's power under Rule 37(b)(2) to enforce its orders issued under Rule 26(c), Brecher is HEREBY HELD IN CIVIL CONTEMPT OF COURT for noncompliance with the Protective Order;

---

[66]     Lewicki claims that the Enzo Defendants are barred from seeking attorney's fees under the equitable doctrine of unclean hands.  *See* 8/10/11 Letter from Lewicki to the Court.  Because the Enzo Defendants seek only legal relief with regards to attorney's fees, the doctrine of unclean hands is inapplicable.  *See Aetna Cas. & Ins. Co. v. Aniero Contract Co., Inc.*, 404 F.3d 566, 607 (2d Cir. 2005).

Pursuant to this Court's power under Rule 37(b)(2) to enforce its orders issued under Rule 26(c), Lewicki is HEREBY HELD IN CIVIL CONTEMPT OF COURT for noncompliance with the Protective Order.

In order to purge his contempt, Brecher is HEREBY ORDERED to pay $33,780.86  to the Enzo Defendants, and to take all necessary steps to retrieve from Glaser any documents designated "Confidential," whether originals or copies, previously produced by the Enzo Defendants;

In order to purge his contempt, Lewicki is HEREBY ORDERED to pay $33,780.86  to the Enzo Defendants, and to take all necessary steps to retrieve from Glaser any documents designated "Confidential," whether originals or copies, previously produced by the Enzo Defendants.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      October 11, 2011
            New York, New York

-22-

**- Appearances -**

**Plaintiff (Pro se):**

Paul Lewicki
P.O. Box 158
Elmwood Park, NJ 07407

**For Defendants:**

Donald H. Chase, Esq.
Gayle Pollack, Esq.
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
(212) 735-8600

**For Non-Party Dan Brecher:**

Robert J. Bergson, Esq.
Abrams Garfinkel Margolis Bergson, LLP
237 West 35th Street, 4th Floor
New York, NY 10001
(212) 201-1170