UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

FRANCIS SCOTT HUNT and SHUNDRA CHERI
HUNT, individually and as Trustee for IAN
CHRISTOPHER HUNT, LAWRENCE A.
MCMAHON and JUDITH J. MCMAHON, PAUL D.
CAVANAGH individually and as Trustee for the
PAUL D. CAVANAGH TRUST, and VIRGINIA
POPE,

                    Plaintiffs,

            - against -

ENZO BIOCHEM, INC., HEIMAN GROSS, BARRY
WEINER, ELAZAR RABBANI, SHARIM RABBANI,
JOHN DELUCCA, DEAN ENGELHARDT, and JOHN
DOES 1-50,

               Defendants.

**OPINION AND
ORDER**

06 Civ. 170 (SAS)

USDC SONY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/22/12

------------------------------------------------------------ X

KEN ROBERTS,

            Plaintiff,

            - against -

ENZO BIOCHEM, INC., et al.,

            Defendants.

06 Civ. 213 (SAS)

------------------------------------------------------------ X

PAUL LEWICKI,

            Plaintiff,

            - against -

ENZO BIOCHEM, INC., et al.,

            Defendants.

06 Civ. 6347 (SAS)

------------------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Dan Brecher, former counsel for plaintiff Paul Lewicki, brings this motion for an Order pursuant to Rule 71 directing non-party Lawrence Glaser to return confidential documents.  On October 12, following an evidentiary hearing at which Brecher and Lewicki — but not Glaser — were present and testified, I granted a motion for sanctions brought by defendants Enzo Biochem, Inc., Heiman Gross, Barry Weiner, Elazar Rabbani, Sharim Rabbani, John Deluca, Dean Engelhardt, and John Does 1-50 (the "Enzo Defendants").[1]  I found both Lewicki and Brecher in civil contempt under Rule 37 for violating this Court's Order for the Protection and Exchange of Confidential Information (the "Protective Order") by improperly giving Glaser confidential materials.  Accordingly, I ordered Brecher to pay $33,780.86 to the Enzo Defendants and to "take all necessary steps to retrieve from Glaser any documents designated 'Confidential,' whether original or copies, previously produced by the Enzo Defendants."[2]  In an effort to comply with this Court's October 12 Order, Brecher now seeks an Order: (1) requiring Glaser to turn over all Confidential Documents and all materials derived therefrom;

---

[1]    *See Hunt v. Enzo Biochem, Inc.* (*Hunt II*), Nos. 06 Civ. 170, 06 Civ. 213, 06 Civ. 6347, 2011 WL 4840713 (S.D.N.Y. Oct. 12, 2011).

[2]    *Id.* at *7-8.

and (2) requiring Glaser to pay damages to Brecher.  For the reasons set forth below, Brecher's motion is granted in part and denied in part.

## II.     BACKGROUND

### A.     Undisputed Facts[3]

In 2001, Lewicki signed a retainer agreement with attorney Michael Rovell with a view towards filing a series of lawsuits against the Enzo Defendants.[4]  Lewicki, Glaser, and most of the other plaintiffs in this case planned to sue the Enzo Defendants for misrepresenting the preliminary success of its HIV and Hepatitis B therapies — including pre-clinical and clinical trials, its patent estate, and other commercial arrangements — in order to inflate the price of Enzo stock and reap a profit.[5]  The plan called for Glaser to win his case in Virginia first, and for the rest of the group to use that hoped-for success in a subsequent case in

---

[3]       Because Glaser was not a party to — and did not testify at — the evidentiary hearing in this matter, my prior factual findings cannot apply to him. In fact, I specifically declined to consider materials that Glaser submitted to the Court in connection with Enzo's motion for sanctions.  *See id.* at *1 n.6.  As such, I will only consider the facts that Glaser does not dispute.

[4]       *See Hunt v. Enzo Biochem, Inc.* (*Hunt I*), Nos. 06 Civ. 170, 06 Civ. 213, 06 Civ. 6347, 2009 WL 1683990, at *1 (S.D.N.Y. June 15, 2009) (citing 4/11/01 Retainer Letter Agreement between Michael Rovell and Paul Lewicki).

[5]       *See id.* at *1.

New York.[6]  At a deposition, Glaser admitted that he entered into a written

agreement with Lewicki, Cavanagh, and Pope in 2001 — an agreement that

required these individuals to contribute to Glaser's legal expenses in return for a

share of any recovery Glaser obtained in his lawsuit.[7]  In line with the plan, Glaser

filed the Virginia case in 2002.[8]  After Glaser's claims were dismissed, he appealed

unsuccessfully to the Fourth Circuit, and then to the Supreme Court.[9]

        In 2006, Lewicki and other plaintiffs commenced this action, making

similar allegations against Enzo.  Plaintiffs were initially represented by Rovell;

when he died, plaintiffs replaced him with Brecher.[10]  Concerned that confidential

documents provided to plaintiffs might be misused by non-parties such as Glaser,

Enzo's counsel negotiated and stipulated the terms of the Protective Order with

Brecher, which was entered on March 25, 2008.[11]  In April, 2009, Lewicki — who

knew about the existence but perhaps not the details of the Protective Order —

---

[6]      *See id.*

[7]      *See id.* at *2 (citing Deposition Transcript of Larry Glaser).

[8]      *See* Motion for an Order Directing Non-Party Lawrence F. Glaser to Turn Over Documents ("Brecher Mem.") ¶ 9.

[9]      *See Glaser v. Enzo Biochem, Inc.*, No. 02 Civ. 1242, 2005 U.S. Dist. LEXIS 44188 (E.D. Va. July 14, 2005), *aff'd*, 464 F.3d 474 (4th Cir. 2006).

[10]     *See* Brecher Mem. ¶ 10.

[11]     *See* Docket No. 85; *Hunt II*, 2011 WL 4840713, at *2.

"requested that Brecher 'ask [Judge Scheindlin] to make [the Protective Order] formally . . . binding on' Glaser, so that Glaser could have access to Enzo's confidential documents."[12]  Brecher refused both Lewicki's request and additional requests made by Glaser, and went so far as to threaten to withdraw as counsel if Lewicki petitioned the Court on his own.[13]  In June 2009, I granted Enzo's motion for summary judgment, dismissing Lewicki's case in its entirety.[14]

On October 2, 2009, Lewicki and Glaser removed boxes of files, some of which were confidential, from Brecher's office in New York City.[15]  Brecher asserts that while he let Glaser assist Lewicki in removing the files, he only did so because: (1) Glaser had an automobile to carry the files (whereas Lewicki did not); and (2) "Lewicki and Glaser had both previously made written representations in communications with [Brecher] indicating that they understood that there was the Protection Order which provided that the Confidential Documents should not be reviewed by persons such as Glaser."[16]  Glaser took the files to an attorney who he

---

[12]     *Hunt II*, 2011 WL 4840713, at *2 (quoting 4/11/09 E-mail Exchange Between Brecher and Lewicki).

[13]     *See id.*

[14]     *See Hunt I*, 2009 WL 1683990, at *10.

[15]     *See* Brecher Mem. ¶ 11.

[16]     *Id.*

hoped would help Lewicki with his appeal, but who ultimately declined to take the case.[17]  Glaser then brought the files to a meeting with Lewicki at a New Jersey Turnpike rest stop at which they reviewed three files that were marked "confidential" and that were covered by the Protective Order.[18]

In January 2011, Glaser filed a motion pursuant to Rule 60 in the Virginia District Court seeking to reopen his original case.  Attached to Glaser's motion were the three confidential files reviewed at the rest stop.[19]  Glaser's Rule 60 motion was denied by the Virginia District Court on April 1, 2011.[20]  After this denial was affirmed by the Fourth Circuit in October, 2011, Glaser again petitioned for a *writ of certiorari* in the United States Supreme Court and was again denied.[21]

Enzo moved in this Court for an Order directing Brecher and Lewicki to: (1) obtain the return of the Confidential Documents for Glaser; (2) pay Enzo for its litigation costs.[22]  I found that Brecher and Lewicki had violated the Protective

---

[17]     *See Hunt II*, 2011 WL 4840713, at *3.

[18]     *See id.*

[19]     *See* Brecher Mem. ¶ 14.

[20]     *See Glaser v. Enzo Biochem, Inc.*, No. 02 Civ. 1242 (E.D. Va. Apr. 7, 2011).

[21]     *See Glaser v. Enzo Biochem, Inc.*, 448 Fed. App'x 324 (4th Cir. Oct. 4, 2011), *cert. denied*, 132 S. Ct. 2376 (May 14, 2012).

[22]     *See Hunt II*, 2011 WL 4840713, at *7-8.

Order and I granted Enzo's motion in full.  In attempting to comply with my Order, Brecher has made several written requests to Glaser for the return of the confidential documents; Glaser has thus far refused and expressed his belief that he has no obligation to comply with Brecher's requests.[23]  Brecher now moves for an Order compelling Glaser to return the documents to Enzo.

### B.    Glaser's Assertions[24]

Glaser is not a party to this action, has never resided in New York, and has had no contact with New York other than to help Lewicki remove the case files from Brecher's office.[25]  Glaser believes that the confidential documents at issue were responsive to subpoenas issued in connection with his bankruptcy case, and that they therefore should never have been covered by a confidentiality agreement or protective order.[26]  Glaser asserts that Brecher never showed him the

---

[23]    *See* Brecher Mem. ¶ 16.

[24]    In the declarations he has submitted to this Court, Glaser makes the following assertions, none of which directly dispute the above facts.

[25]    *See* Declaration of Lawrence Glaser in Opposition to the Motion for Sanctions ("Glaser Decl."), ¶¶ 1, 2.  Brecher disputes this and asserts that Glaser has had additional contact with New York.  *See* Reply to Opposition to Motion for an Order Directing Non-Party Lawrence F. Glaser to Turn Over Documents ("Brecher Reply Mem."), ¶ 6.

[26]    *See* Glaser Decl.  ¶ 7; Sur-Reply Declaration of Lawrence Glaser in Further Opposition to the Motion for Sanctions ("Glaser Sur-Reply Decl."), ¶ 5.

Protective Order — and that although he knew of its existence, he never signed or agreed to be bound by it.[27]  Further, Glaser asserts that when he looked through the documents, there was no red weld folder marked confidential, nor was there any other way for him to identify which documents might be covered by the Protective Order.[28]  Indeed, Glaser asserts that when Brecher gave him the files, he knew Glaser would use them in an attempt to reopen his Virginia case.[29]

## III.   APPLICABLE LAW

### A.   Personal Jurisdiction and Due Process

A court may not assert personal jurisdiction over a party if doing so would deny that party due process under the Fourteenth Amendment.[30]  This due process inquiry has two steps:  *first*, a court must determine whether the party has had minimum contacts with the state in which it sits sufficient to justify the

---

[27]      *See id.* ¶ 9.

[28]      *See id.* ¶ 10.  Brecher asserts that he personally placed these files in red welds marked "confidential.  *See* Brecher Reply Mem. ¶¶ 3, 4.  Further, Glaser's assertions are undercut by e-mails from Glaser to Brecher indicating Glaser's awareness that he could not utilize certain files that were marked "confidential" and subject to the confidentiality order.  *See* Declaration of Dan Brecher in Support of Motion for an Order Directing Non-Party Lawrence F. Glaser to Turn Over Documents.

[29]      *See* Glaser Sur-Reply Decl. ¶ 6.

[30]      *See* U.S. Const. amend. XIV, § 1.

exercise of personal jurisdiction over that party; and *second*, the court must determine whether the exercise of personal jurisdiction is reasonable and thus comports with "'traditional notions of fair play and substantial justice.'"[31] "'The two prongs of the inquiry are interrelated, such that a weak showing of minimum contacts requires a stronger demonstration of reasonableness.'  The converse is also true."[32]

The minimum contacts requirement ensures that a party is not haled into court "solely as a result of random, fortuitous, or attenuated contacts."[33] To establish the minimum contacts necessary to satisfy specific jurisdiction,

> [T]he plaintiff first must show that his claim arises out of or relates to defendant's contacts with the forum state.  The plaintiff must also show that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there.[34]

> If a party's contacts with the forum state rise to this minimum level, a

---

[31]     *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[32]     *Stolt Tankers B.V. v. Geonet Ethanol, LLC*, 591 F. Supp. 2d 612, 616 (S.D.N.Y. 2008) (quoting *Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03 Civ. 917, 2003 WL 22400213, at *5 (S.D.N.Y. Oct. 21, 2003)).

[33]     *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted).

[34]     *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998).

party may defeat jurisdiction only by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[35] The reasonableness factors include:  (1) the burden imposed on the party by the exercise of personal jurisdiction; (2) the forum state's interest in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in efficient resolution; and (5) the state's interest in promoting substantive social policies.[36]

## B.    Protective Orders

### 1.    Generally

It is well-established that courts have inherent equitable powers to grant confidentiality orders.[37]  Courts have the power to seal both court filings and

---

[35]    *Burger King*, 471 U.S. at 477.

[36]    *See, e.g.*, *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002).

[37]    See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) ("[W]e have no question as to the court's jurisdiction to [enter protective orders] under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.") (quotation omitted); *International Prods. Corp. v. Koons*, 325 F.2d 403, 407-08 (2d Cir. 1963) ("[W]e have no question as to the court's jurisdiction to [forbid the publicizing, in advance of trial, of information obtained by one party from another by use of the court's processes] under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.'") (quoting *Gumbel v. Pitkin*, 124 U.S. 131, 144 (1888)).

documents produced in discovery.[38]  Such orders are necessary given the scope of modern discovery:

> "[T]he expanded scope of discovery under the Federal Rules and the increased amounts of information they generated created side effects outside the adjudicatory system — it posed a threat to privacy and confidentiality. To meet this new problem, the discovery rules contain provisions, such as the authorization for protective orders in Rule 26(c), to limit the discovering party's use of information beyond the litigation context."[39]

Thus, "[p]rotective orders serve essential functions in civil adjudications, including the protection of the parties' privacy and property rights."[40]

### 2.    Court Authority to Enforce Protective Orders

Courts have inherent power to enforce their orders.  "[T]he power of a court to make an order carries with it the equal power to punish for a disobedience of that order."[41]  Moreover, courts have inherent power to issue orders designed to

---

[38]    *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994) (rejecting the argument "that the district court lacked the power to enter an order of confidentiality over a document which is not in the court file nor incorporated into an order of the court").

[39]    *In re Zyprexa*, 474 F. Supp. 2d 385, 414 (E.D.N.Y. 2007) (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 447 (1991)).

[40]    *Id.*

[41]    *In re Debs*, 158 U.S. 564, 594 (1895).  *Accord In re Lafayette Radio Elec. Corp.*, 761 F.2d 84, 93 (2d Cir. 1985) ("[A]ncillary jurisdiction is recognized as part of a court's inherent power to prevent its judgments and orders from being

correct wrongs committed through its process.[42]

A court may not "enjoin the entire universe of potential violators of its orders"; it has no power to enjoin "those who are acting independently of the enjoined party and whose own rights have not been adjudged."[43]  However, "third parties 'who are in active concert or participation' with the parties, their officers, agents, servants, employees or attorneys, can be enjoined."[44]  As the Second Circuit explained:

> This language gives force to injunctions and prevents parties from violating them by proxy. "[D]efendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."[45]

ignored or avoided with impunity.").

[42] *See Arkadelphia Milling Co. v. St. Louis Sw. Ry. Co.*, 249 U.S. 134, 146 (1919) ("It is one of the equitable powers, inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process.");  *In re Lafayette Radio Elec. Corp.*, 761 F.2d 84, 92-93 (2d Cir. 1985) ("[I]t is established that a federal court sitting in equity that has jurisdiction to issue a decree necessarily has ancillary and supplemental jurisdiction to enter orders and judgments designed to effectuate that decree . . . . [A]ncillary jurisdiction is recognized as part of a court's inherent power to prevent its judgments and orders from being ignored or avoided with impunity.").

[43] *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13-14 (1945)).

[44] *Id.* (quoting Fed. R. Civ. P. 65(d)(2)).

[45] *Id.* (quoting *Regal Knitwear*, 324 U.S. at 14).

This is as true for orders created under Rule 26(c) as it is for injunctions issued under Rule 65.[46]  Moreover, a court has jurisdiction over those who aid and abet the violation of its discovery orders, regardless of their location.[47]

### C.    Collateral Estoppel

Collateral estoppel bars re-litigation of an issue where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."[48]  A court should also consider whether estoppel would be unfair to the defendant because the current plaintiff could have easily joined the earlier action, the current suit was not foreseeable, the defendant had little incentive to defend the first action vigorously, or the second action affords the defendant procedural opportunities that could cause a different

---

[46]     *See id.*

[47]     *See Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985) ("Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order."); *Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963) ("Violation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred.").

[48]     *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

result.[49]

## IV.   DISCUSSION

### A.   Brecher's Leave to File This Motion

This Court's individual rules require that prior to filing a motion, a party must "write to Chambers, with a copy to opposing counsel, to request a pre-motion conference."[50]  Glaser asserts that Brecher never served him with a copy of the pre-motion letter he sent to the Court.[51]  On this basis, Glaser argues that the Court never should have considered Brecher's request, and that because leave to file this motion was improvidently granted, the motion should be denied.  While Brecher should have served Glaser a copy of his pre-motion letter, denying Brecher's motion on that basis would only delay the resolution of this dispute.  That said, as a corrective measure I granted Glaser's September 11, 2012 request to file a sur-reply consisting of a declaration and a memorandum of law.[52]  I have considered both of those documents in deciding this motion.

---

[49]     *See Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 330-31 (1979).

[50]     Individual Rules and Procedures of Judge Shira A. Scheindlin, Rule IV.A.

[51]     *See* Non-Party Respondent Lawrence Glaser's Memorandum of Law in Opposition to Dan Brecher's Motion for Sanctions ("Glaser Mem."), at 8.

[52]     *See* 9/11/12 Letter from Simon Kogan to the Court.

### B.   Nature of the Relief Sought

Brecher asserts that he is moving pursuant to Rule 71.[53]  This Rule states that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."  This Rule primarily governs the service of process on non-parties and the enforcement of court orders against them.  There is no court order here that directly binds Glaser.  Glaser correctly points out that because he did not sign the Protective Order, he did not directly violate it.  Similarly, my October 2011 Opinion and Order was enforceable only against Brecher and Lewicki — not Glaser.  Instead, Brecher's motion is best understood as a motion for an order requiring Glaser to turn over the confidential files to Enzo and pay Brecher damages.

### C.   Personal Jurisdiction

Glaser argues that it would offend due process for this Court to exercise jurisdiction over him because his contacts with New York fall well short of the minimum contacts required by *International Shoe* and its progeny.  Because Glaser's contacts with New York indisputably fall short of that required for *general* jurisdiction, the question is whether this Court may exercise *specific* jurisdiction over Glaser "arising out of or related to [his] contacts with the

---

[53]     *See* Brecher Mem. ¶ 7.

forum."[54]   Glaser asserts that his only contact with New York was his retrieval of

the files from Brecher's office.  Although Brecher asserts that Glaser had

additional contacts with New York, this Court has not conducted an evidentiary to

determine whether Brecher is correct.[55]  Accordingly, for the purposes of this

motion, I have accepted Glaser's assertion as true.

Glaser admits the following: (1) he knew that the Protective Order

existed;[56] and (2) he refused to sign it because he wanted to use confidential

documents to reopen his case in Virginia.[57]  In his attempt to reopen his Virginia

case — and again in the exhibits he has submitted to this Court — he has included

documents stamped "confidential," indicating his awareness that he possesses

---

[54]     *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

[55]     Similarly, because Glaser was never a party to this action, none of my prior factual findings are binding on him.

[56]     *See*  Glaser Sur-Reply Decl. ¶ 5.  Glaser asserts that while he knew of the Protective Order's existence, he never saw it and remains unaware of its provisions.  *See id.*

[57]     *See id.*  Glaser argues that the files at issue are not "confidential" because they were responsive to subpoenas issued in connection with Glaser's bankruptcy.  *See* Glaser Mem. at 2.  I have no authority to determine whether these documents should have been turned over to Glaser in a different litigation in a different court.

documents covered by the Protective Order.[58]  Based solely on these facts, this Court has jurisdiction to order Glaser to return the files to Enzo.[59]

In *Eli Lilly & Co. v. Gottstein*, a recent and closely-analogous case, the Second Circuit stated that a non-party's "aiding and abetting the breach of [a Protective Order] gives the issuing court jurisdiction over the nonparty aider and abettor to enjoin him from continuing those actions."[60]  In *Eli Lilly*, a protective order governed the sharing of confidential documents among the parties.[61]  One of plaintiffs' experts decided to share confidential documents with the media, notwithstanding that he had signed the protective order.[62]  The expert arranged to have an Alaskan attorney intervene in an unrelated case and obtain a subpoena requiring the expert to produce the confidential documents, which he did.[63]  Although the Alaskan attorney never signed the protective order and had no direct

---

[58]     Glaser might — in an evidentiary hearing — argue that when he retrieved the files from Brecher's office, he was unaware that he was retrieving confidential documents.   Even if this was so, there can be no doubt that Glaser is now aware that he possesses documents covered by the Protective Order.

[59]     *See Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010).

[60]     *Id.* at 195.  Despite the close parallels and clear relevance of *Eli Lilly*, neither Glaser nor Brecher cited it or made arguments relating to it.

[61]     *See id.* at 189-90.

[62]     *See id.* at 190.

[63]     *See id.*

contact with New York, the district court issued an injunction requiring him to return the confidential documents.[64]  The Second Circuit affirmed, holding that although "courts cannot enjoin the entire universe of potential violators of its orders," they can enjoin "third parties 'who are in active concert or participation' with the parties, their officers, agents, servants, employees or attorneys."[65]  The Second Circuit's reasoning was as follows:

> If courts cannot bind third parties who aid and abet the violation of their protective orders, then any party, agent, attorney or expert who comes into possession of material he wanted to use against the producing party could simply disseminate the information quickly, then deal with the damages issue after the fact. We understand that the threat of a sizable damages award may deter this action in some cases, but [appellant]'s proposed rule would eviscerate courts' ability to manage discovery and, hence, litigation.[66]

Accordingly, the Second Circuit held that the district court's injunction was "a perfectly appropriate device to foreclose further dissemination of the confidential documents produced under the protective order."[67]

Glaser is a "[nonparty] who reside[s] outside the territorial

---

[64]    *See In re Zyprexa*, 474 F. Supp. 2d at 429-30.  *In re Zyprexa* was the district court opinion that *Eli Lilly* affirmed.

[65]    *Eli Lilly*, 617 F.3d at 195 (quoting Fed. R. Civ. P. 65(d)(2)).

[66]    *Id.*

[67]    *Id.* at 196.

jurisdiction" of this Court, yet he is "subject to [this] court's jurisdiction [because he had] actual notice of the court's order, [and] actively aid[ed] and abet[ted] a party in violating that order."[68]  Glaser may not have known the specifics of the Protective Order, but he *did* know of its existence, and he *was* aware it applied to Lewicki and Brecher.  At some point, Glaser became aware that the files he had retrieved from Brecher's office were confidential, and that Brecher and Lewicki has violated the Protective Order by sharing them with him.  Rather than returning or ceasing to use these improperly-obtained documents, Glaser exacerbated the consequences of the violation by using them in an attempt to reopen his Virginia litigation against Enzo.  Even now, Glaser refuses to return the documents.  These actions constitute aiding and abetting Brecher's and Lewicki's violation of the Protective Order.  Thus, this Court has jurisdiction to issue an injunction preventing Glaser from making further use of documents obtained via an abuse of its process.

### D.    Damages/Sanctions

While this Court has jurisdiction to order Glaser to return the confidential documents, it is less clear whether this Court has jurisdiction to sanction him for his past actions or otherwise find him "liable."  Moreover,

---

[68]    *Waffenschmidt*, 763 F.2d at 714.  The Second Circuit's opinion in *Eli Lilly* cited *Waffenschmidt* in its jurisdictional analysis.

because I am not holding that Glaser has violated any order of this Court, neither

sanctions nor damages are appropriate.  This distinction was key to the Second

Circuit's decision in *Eli Lilly*.  In rejecting the appellant's assertions that the

district court had tried to enforce its protective order against him, the Second

Circuit clarified that:

> [T]he district court did not enforce [the protective order] against
> [appellant] — an order to which [he] was not privy. [Appellant]
> seems to miss the fact that the injunction against which he appeals
> merely "enjoined him from further disseminating" the "documents
> produced by Eli Lilly and Company subject to [the protective
> order]" and required him "forthwith [to] return any such
> documents and copies still in his . . . possession . . . ."  It did not
> purport to bind [him] to the provisions of the protective order.
> Thus, [Appellant]'s assertion that the court "enforce[d] a protective
> order under Rule 26(c)" against him is wholly mistaken. Nor, as
> [he] contends, did the court impose aiding-and-abetting "liability."
> The district court made this abundantly clear, observing that "this
> is not a contempt proceeding, and the court is not now punishing
> anyone for any alleged violation of court orders.  Rather, this
> proceeding seeks to prevent irreparable harm to Lilly by enjoining
> those persons whose actions threaten such harm."[69]

 Similarly, I am not holding that Glaser violated any provisions of the Protective

Order, nor am I imposing aiding and abetting "liability" or "punishing" him for

violating this Court's orders.[70]

---

[69]     *Eli Lilly*, 617 F.3d at 194 (quoting *In re Zyprexa*, 474 F. Supp. 2d at
426, 430).

[70]     That said, should Glaser refuse to comply with this Opinion and
Order, contempt and sanctions may be the next step.

It is also unclear whether Brecher is entitled to any damages.  I ordered Brecher to obtain the return of the confidential documents from Glaser and pay Enzo for its litigation costs because I found him in contempt under Rule 37 for his failure to comply with a Protective Order.[71]  By seeking damages against Glaser, Brecher is attempting to shift the cost of my order to Glaser.  Brecher, however, is fully responsible for his violation of the Protective Order.  Thus, there is no justification — equitable or otherwise — for shifting the burden of his sanctions to others.

### E.    Collateral Estoppel

In March, 2011, Enzo moved in the Eastern District of Virginia for sanctions against Glaser stemming from his use of the confidential documents in an attempt to reopen his case.[72]  Judge Gerald Lee initially granted these sanctions, but reversed himself *sua sponte* days later when he realized that Glaser was not a party to the Protective Order.[73]  Glaser now argues that because Brecher's motion raised "the same fundamental arguments" that Enzo raised in its motion for sanctions, Judge Lee's decision precludes this Court from reaching a different result.  Glaser

---

[71]    *See Hunt II*, 2011 WL 4840713, at *6-7.

[72]    *See* Glaser Decl., Ex. C.

[73]    *See id.*, Exs. D, E.

asserts that because Brecher "has become a shill for"[74] Enzo, and because "Brecher's motion advances Enzo's interests in seeing that the allegedly confidential documents never see the light of day,"[75] Brecher is in privity with Enzo. *First*, Brecher is neither a "shill" for Enzo, nor is he is in privity with it; rather, he brings this motion on his own behalf in an attempt to comply with this Court's order directing him to retrieve the documents from Glaser.[76] *Second*, the question of privity between Brecher and Enzo is irrelevant because this motion presents a different issue than Enzo's motion against Glaser in Virginia.

Enzo's motion for sanctions against Glaser was: (1) an attempt to vindicate Enzo's interests; and (2) premised on the incorrect assumption that Glaser was bound by the Protective Order. Collateral estoppel does not apply to Brecher's motion because Brecher is not attempting to relitigate Judge Lee's determination that the Protective Order does not apply to Glaser. Further, although

---

[74]    Glaser Mem. at 8.

[75]    Glaser Sur-Reply Mem. at 4.

[76]    Glaser's repeated accusations that Brecher is advancing Enzo's interests and has become a "shill" for defendants appears to stem from a gross misunderstanding of an attorney's role. While attorneys should vigorously pursue their client's interests, they are also officers of the court and must not act in bad faith or willfully violate court orders. *See United States v. Seltzer*, 227 F.3d 36, 40-41 (2d Cir. 2000). Brecher's current efforts to undo the damage caused by his violation of the Protective Order is fully in accordance with his role as an officer of the court and well within the bounds of his professional responsibility.

I am ordering Glaser to turn over the confidential documents to Enzo, this Opinion and Order stems not from Enzo's rights but from this Court's interest in ensuring that its orders are followed.  As the Second Circuit reasoned in *Eli Lilly*, if district courts could not order the turnover of documents procured by those who aid and abet the violation of protective orders, " courts' ability to manage discovery and, hence, litigation [would be eviscerated]."[77]

## V.    CONCLUSION

Brecher's motion is granted in part and denied in part.  Glaser is hereby enjoined from further disseminating all confidential documents obtained from Brecher and all materials derived therefrom.  Glaser shall forthwith return any such documents and copies still in his possession or control to Enzo. Brecher's motion for damages is denied.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      October 22, 2012
            New York, New York

---

[77]     *Eli Lilly*, 617 F.3d at 195.

-22-

## - Appearances -

**Plaintiff (Pro se):**

Paul Lewicki
P.O. Box 158
Elmwood Park, NJ 07407

**For Defendants:**

Donald H. Chase, Esq.
Gayle Pollack, Esq.
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
(212) 735-8600

**For Non-Party Dan Brecher:**

Robert J. Bergson, Esq.
Abrams Garfinkel Margolis Bergson, LLP
237 West 35th Street, 4th Floor
New York, NY 10001
(212) 201-1170

Dan Brecher, Esq.
Scarini Hollenbeck, LLC
99 Park Avenue, 16th Floor
New York, NY 10016
(212) 286-0747

**For Non-Party Lawrence Glaser:**

Simon Kogan, Esq.
171 Wellington Court, Suite JJ
Staten Island, NY 10314
(718) 984-3789